UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ELAINE L. COLLETT, *et al.*,
Plaintiffs,

v.

SOCIALIST PEOPLES' LIBYAN, ARAB JAMAHIRIYA, *et al.*,
Defendants.

Civil Action No. 01-2103 (RMU/AK)

**MEMORANDUM OPINION**

Pending before the Court are Plaintiffs' Motion to Compel Discovery and for Sanctions ("Motion") [34], Defendants' Opposition to Plaintiffs' Motion and Cross-Motion for Protective Order ("Defendants' Opposition/Cross-Motion") [35], Plaintiffs' reply to Defendants' Opposition ("Plaintiffs' Reply") [34 ]; Plaintiffs' opposition to the Cross-Motion ("Plaintiffs' Opposition") [37] ; and Defendants' reply to the Motion ("Defendants' Reply") [39]. The Motion and the Cross-Motion relate to the scope of discovery in the instant case, following the trial court's March 24, 2005 Memorandum Opinion and Order [29, 28] allowing "jurisdictional discovery concerning Libya's provision of material support and resources to the Abu Nidal Organization . . . ." March 24, 2005 Order [28].

## I. BACKGROUND

Plaintiffs Elaine Collett, Karim Collett, David Collett, and Suzie Grant, individually and on behalf of the Estate of Alec Collett, seek damages arising out of the abduction of Alec Collett on or about March 25, 1985, his captivity for over a year, and his murder by hanging on or about

April 17, 1986.[1]  Plaintiff Elaine Collett is the surviving wife of Alec Collett; the other Plaintiffs are Mr. Collett's natural children.  Defendants named in this case are the Socialist People's Arab Jamahiriya (hereinafter "Libya"); the Libyan Security Organization ("LESO"); Libyan leader Muammar Qadhafi ("Qadhafi"); the Abu Nidal Organization; and John Does 1-99, certain officials, employees, and agents of Libya, whose exact identities are unknown.

Plaintiffs allege that Libya, LESO, Qadhafi and the John Does provided support to the Abu Nidal Organization, an international terrorist organization responsible for Mr. Collett's abduction, captivity and death.  Plaintiffs further allege that the Defendants are subject to suit in the United States pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1605(a)(7).  Plaintiffs assert that their claims for wrongful death, personal injury and related torts perpetrated by state sponsors of terrorism and their officials, employees, and agents fall within the meaning of 28 U.S.C. §1605(a)(7), and 28 U.S.C. §1605 note (the so-called "Flatow Amendment.")

Plaintiffs filed their Complaint on October 9, 2001, and on November 13, 2002, the trial court granted a motion to stay pending jurisdictional discovery.  Defendants filed a motion to dismiss the Complaint on May 15, 2003, on grounds of lack of subject matter and personal jurisdiction and failure to state a claim.  On March 16, 2004, the trial court issued a Memorandum Order [15] denying without prejudice the Defendants' motion to dismiss and granting Plaintiffs leave to amend their Complaint.  Plaintiffs subsequently filed their Amended Complaint [22] on April 16, 2004.  On May 16, 2004, Defendants moved to dismiss the amended complaint for lack of subject matter and personal jurisdiction and failure to state a claim.

---

[1]Alec Collett is presumed dead although this information cannot be verified.

In its March 24, 2005 Order [28], the trial court granted in part and denied in part the motion to dismiss and requested that the parties submit a joint jurisdictional discovery plan on or before April 25, 2005.  In its Memorandum Opinion [29] accompanying the March 24, 2005 Order, the trial court found that "[Section] 1605(a)(7) requires a minimal showing that Libya provided material support to the Abu Nidal organization and that such support was the proximate cause of the plaintiff's injury." Memorandum Opinion [29] at 8.  Accordingly, the trial court ruled that :

> The defendants' challenge regarding the provision of material support and resources attacks the factual basis of the court's jurisdiction and requires the court to drop the assumption of truth that the court would otherwise afford the plaintiffs' complaint. *Phoenix Consulting*, 216 F.3d at 40.  Such a dispute can only be resolved through the appropriate jurisdictional discovery.  *Wyatt*, - - F.Supp.2d –, 2005 WL 517771 at *9 (ordering "jurisdictional discovery on the issue of Syria's alleged provision of material support and resources to [a terrorist organization]").  Accordingly the court will order the parties to submit a joint discovery plan regarding Libya's alleged provision of material support and resources to the Abu Nidal Organization.

*Id.*

On April 25, 2005, the parties submitted their Joint Proposed Jurisdictional Discovery Plan ("Joint Discovery Plan") [31], noting that "[d]iscovery [was] to be had pursuant to all methods and procedures allowed under the Federal Rules of Civil Procedure and the Local Civil Rules of [this] Court . . . ."  The Joint Discovery Plan also provided deadlines for initial Rule 26(a)(1) disclosures and expert disclosures.  In a Minute Order dated April 26, 2005 [no docket number assigned], the Court adopted the Joint Discovery Plan and indicated that jurisdictional discovery closes on November 30, 2005.

Plaintiffs now move to compel discovery from Defendants Libya and LESO.  Plaintiffs contend that neither of these two defendants "has (1) produced a single document; (2) appeared


for properly noticed depositions; (3) answered interrogatories in any meaningful, non-evasive way, or . . . sign[ed] their interrogatory responses, . . .; or (4) made any Rule 26(a) disclosures as agreed to in the Joint Proposed Jurisdictional Discovery Plan and required by this Court . . . ." Motion at 1. Defendants Libya and LESO contend that they do not have any documents, names of individuals or any other information which should be provided under Rule 26(a)(1) disclosure requirements. Defendants' Opposition/Cross-Motion at 8-9. Defendants Libya and LESO further allege that the scope of the discovery requested vastly exceeds the scope of discovery anticipated under the trial court's March 24, 2005 Order and allowed by the Federal Rules of Civil Procedure. Accordingly, Libya and LESO move for a protective order requesting that the Court restrict the Plaintiffs to the limited jurisdictional discovery contemplated by the Court and prohibit the Plaintiffs from deposing Libyan officials.

## II. LEGAL STANDARD

______Federal Rule of Civil Procedure 26(b) provides that discovery is permitted "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery . . ." Once a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is discoverable. *See Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 316, 325 (D.D.C. 2000). If there is an objection based on undue burden, the objecting party must make a specific, detailed showing of how the discovery request is burdensome. *See Chubb Integrated Systems Ltd. v. National Bank of Washington,* 103 F.R.D. 52, 60-61 (D.D.C. 1984) ("An objection must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the

burden.")

Under Fed. R. Civ. P. 26(b)(2)(iii), the court may limit discovery on its own initiative, if it determines that the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving those issues." *See Hammerman v. Peacock*, 108 F.R.D. 66, 67 (D.D.C. 1985).

Fed. R. Civ. P. 26(c) provides in part that:

> Upon motion by a party or the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Pursuant to Rule 26(c), the court may direct "(1) that the disclosure of discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery."

The party moving for a protective order bears the burden of making a showing of good cause required by Rule 26(c). *See e.g. Alexander v. FBI*, 186 F.R.D. 60, 64 (D.D.C. 1998); *see also Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001) (holding that "complete prohibition of a deposition [is] an 'extraordinary measure' which should be resorted to only in rare occasions.") (citation omitted). A trial court possesses broad discretion in issuing a protective order and determining what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also United States v. Microsoft Corp.*, 165 F. 3d 952, 959

(D.C. Cir. 1996). The decision to limit or deny discovery by means of a Rule 26 protective order requires the court to balance "the requestor's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material; and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. Dep't of Health and Human Servs.*, 87 F. 3d 508, 517 (D. C. Cir. 1996) (citation omitted); *see also Amfac Resorts, L.L.C. v. Dep't of the Interior*, 143 F. Supp. 2d 7, 14 (D.D.C. 2001).

## III. ANALYSIS

### A. Depositions

In the instant case, Plaintiffs served two Notices of Deposition, [with a return date of September 12, 2005] for the purpose of "depos[ing] the person who was primarily responsible for conducting Libya's search for documents responsive to plaintiffs' First Request for Production of Documents Directed to Libya and . . . the person who was primarily responsible for LESO's search for documents responsive to plaintiffs' First Request for Production of Documents Directed to LESO." Motion at 7; *see also* Notices of Deposition attached as Exhibit D thereto. Plaintiffs contend that Defendants did not object to scheduling or the proposed location for such depositions, but instead they refused to comply on grounds that depositions are not encompassed within the Joint Discovery Plan and are outside the limits of jurisdictional discovery set by the trial court.

The Joint Discovery Plan [31] provides that discovery will be had "pursuant to all methods and procedures allowed under the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the District of Columbia." *See* [31] at 1. Fed. R. Civ. P. 30 provides that parties may take depositions upon oral examination. Whether or not

depositions were specifically mentioned in the Joint Discovery Plan, the phrase "all methods and procedures allowed under the Federal Rules of Civil Procedure" certainly includes depositions and accordingly, Defendants' argument that the Joint Discovery Plan does not anticipate depositions is without merit.

Defendants Libya and LESO assert that the deposition testimony proposed by Plaintiffs is also objectionable because it falls outside the scope of jurisdictional discovery insofar as it will not enable the Court to make a "determination of its own competence [in terms of exercising jurisdiction]." Defendants'Opposition/Cross-Motion at 7.[2] While the questions that Plaintiffs intend to ask the deponents do not *per se* attempt to define Libya's sponsorship and support of the Abu Nidal Organization, these questions are directed at ascertaining the basis of Defendants' position that they have no documents related in any way to Abu Nidal and to verify that an appropriate search for such documents was effected. This Court finds that the Plaintiffs' requests for two depositions is reasonable in light of Defendants' non-verified contentions that they have neither information nor documents regarding the Abu Nidal Organization.

Plaintiffs have currently noticed two depositions.[3] Defendants have not specifically indicated that compliance with the two Notices would require the appearance of more than two persons except to generally assert that compliance would "require a large number of Libyan officials to travel to the United States," without an estimate of the actual number of persons.

---

[2]Plaintiffs indicate that they want to inquire about searches for documents responsive to the Document Requests, such as the date any search was conducted, what government offices, archives, document repositories and record centers were searched, and what classes of documents were examined. Motion at 8.

[3] Plaintiffs have noted that they may eventually need to take other depositions but that issue is not currently pending before the Court.

Defendants' Opposition/Cross-Motion at 7,10. Weighing the burden and expense of the proposed discovery with its likely benefit, the Court finds that the burden and expense will be eased if Plaintiffs conduct the two depositions upon written questions pursuant to Fed. R. Civ. P. 31, or alternatively, if they conduct such depositions using teleconferencing or videoconferencing, as opposed to taking the depositions upon oral examination. Defendants Libya and LESO are instructed to cooperate with the Plaintiffs in providing deponents who can respond to the inquiries posed by Plaintiffs, at a mutually convenient place and time, within thirty days from the date of this Memorandum Opinion and the accompanying Order.

**B. Interrogatories and Document Requests**

Plaintiffs contest Defendants' Interrogatory Responses on the procedural grounds that "[b]oth Libya and LESO served responses to Interrogatories that were unsigned by any representative of any party" contrary to the requirements set forth in Fed. R Civ. P. 33(b)(2). Motion at 9. Rule 33(b)(1) requires that interrogatories be answered "in writing under oath," and Rule 33(b)(2) states that the "answers are to be signed by the person making them, and the objections signed by the attorney making them." Defendants assert that Libya's Washington D.C. counsel has been authorized by the defendants to sign all responsive documents for the defendants due to the difficulty of communications between Libya and the United States.[4] The Court notes that this contention does not excuse noncompliance with the Federal Rules of Civil Procedure and this Court instructs Defendants Libya and LESO to specifically comply with the requirements of Rule 33 by providing their answers and objections under oath.

---

[4]If counsel has been authorized to sign the interrogatories on behalf of the defendants, he should provide this Court with evidence of his authorization to do so.

Plaintiffs assert that Defendants have "not produced a single responsive document, claiming that there are none." Motion at 3 (emphasis in original). Plaintiffs contend that Defendants' responses to their Interrogatories are implausible, as demonstrated by Defendants' claim that they cannot identify a single person presently or formerly affiliated with or employed by the Government of Libya or by LESO who knows anything about the Abu Nidal Organization. *See* Interrogatory Responses Nos. 3 and 4, Motion Exhibit C. Plaintiffs argue that Defendants' responses are "inadequate, evasive and incomplete" insofar as they deny that any persons have knowledge of Abu Nidal, the Abu Nidal Organization or Alec Collett, and they deny the existence of any records regarding Abu Nidal or the Abu Nidal Organization, when "there is ample publicly available evidence linking Libya and its intelligence service with Abu Nidal and the Abu Nidal Organization through the relevant period." Motion at 11. *See also* Appendix attached to Motion.[5] Without concluding that Defendants have affirmatively misled the Plaintiffs, the Court notes that Defendants' responses to Interrogatories and Document Production Requests, on their face, suggest that Defendants were not diligent in their inquiries into these issues and they did not make a good faith effort to respond to Plaintiffs' discovery requests.

Defendants rely on their objections to the discovery, asserting that they have "rightfully refused to provide answers to interrogatory requests which are overly burdensome and do not relate to the limited jurisdictional discovery . . . ." *Id.* Defendants Libya and LESO move this

---

[5]The Appendix consists of an Expert Witness Report of Bruce D. Tefft, a 20-year veteran of the Central Intelligence Agency, and a specialist in intelligence collection, analysis, counterintelligence and counter-terrorism, who has served as an expert witness in many cases involving claims brought by victims of terrorism. Attached to Mr. Tefft's Report is a list of articles linking Abu Nidal to Libya during the 1980's through the 1990's.

Court for a protective order seeking to restrict Plaintiffs to the inquiries set forth in the trial court's March 24, 2005 Order granting limited jurisdictional discovery. Defendants' general objection to the Plaintiffs' Interrogatories suggests that jurisdictional discovery relates only to the "alleged provision of material support to the Abu Nidal Organization by Libya" where "such support was the proximate cause of plaintiff's injury." Exhibit A to Motion, Defendant Libya's Response and Objections to First Set of Interrogatories at 2. This Court finds that while the trial court engaged in a limited discussion of proximate cause in its March 24, 2005 Memorandum Opinion, the language in its March 24, 2005 Order does not impose any requirement of proximate cause. Accordingly, such general objection is not supported by the record in this case and will not be upheld. This Court will now examine each contested Interrogatory and Defendants' specific objections thereto to ascertain whether Defendants have proffered good cause for their failure to respond to Plaintiffs' Interrogatories in a meaningful manner.

**C. Contested Interrogatories**

**Interrogatory No. 1**

Interrogatory No. 1 seeks the name, address, and telephone number of persons within the Libyan government [and LESO] who are responsible for record-keeping relating to governmental activities for the period 1984 through 1988. Motion at 12-13. Defendants contest this Interrogatory on grounds that it is overly broad. Plaintiffs acknowledge that Interrogatory No. 1 may be narrowed to request identification of "individuals responsible for maintaining records relevant to terrorism or to Abu Nidal." *Id.* at 13. Plaintiffs indicate that they selected the time frame of 1984 through 1988 because they are interested in Libya's governmental policies which predate and postdate Alec Collett's kidnapping in 1985 and death in 1986, but Plaintiffs

acknowledge that the Interrogatory could be modified to request information for the period 1985-1986. The Court finds that the modifications proposed by Plaintiffs address the objection posed by Defendants and accordingly, Defendants should respond to Interrogatory No. 1 by providing the titles and addresses of persons within the Libyan government and LESO who are responsible for maintaining records relevant to terrorism or to Abu Nidal.

**Interrogatory No. 2**

______ Interrogatory No. 2 requests identification of persons within the Libyan Government and LESO who are responsible for dealing with terrorism and terrorists. Libya and LESO proffer no specific objection, instead relying on the General Objection discussed and dismissed above. The Court therefore finds that Defendants must respond to this Interrogatory.

**Interrogatories Nos. 3 and 4**

______These two Interrogatories request identification of persons who have knowledge of the Abu Nidal Organization or Abu Nidal. Defendants object to the time frame noted in these Interrogatories but the Court finds that Plaintiffs' inquiry encompassing one year before Alec Collett's kidnapping and two years after his murder is reasonable. Defendants are ordered to respond in a meaningful fashion to these Interrogatories. If Defendants continue to assert that there are no persons who have knowledge of these issues, they are directed to provide the Plaintiffs with a detailed narrative description of the steps taken by Defendants in their effort to respond to these Interrogatories. Such responses should be provided under oath, as previously noted.

**Interrogatories Nos. 5 and 6**

______These two Interrogatories seek identification of persons who have knowledge of Alec

Collett, his kidnapping or his death. Defendants re-assert their General Objection and proffer that there is "no-one, either presently or formerly in their employ, who knows anything about this subject." Motion at 15. The Court has already ruled that Defendants' General Objection is without merit. Furthermore, based on the information provided by Plaintiffs, the Court finds it implausible that the Defendants have no information whatsoever regarding Alec Collett. Accordingly, Defendants are instructed to make additional inquiries regarding these Interrogatories, consistent with the instructions noted above, in this Court's discussion of Interrogatories Nos. 3 and 4.

**Interrogatory No. 7**

Interrogatory No. 7 requests the identification of records related in any way to Abu Nidal. Defendants respond that no such records exist. Defendants are instructed to make a good faith search for any such records and in the event that they continue to assert that no records exist, they should provide Plaintiffs with a description of steps taken in response to this Interrogatory.

**Interrogatory No. 8 [LESO]**

This Interrogatory ask LESO to identify and describe all of its records related in any way to terrorism or terrorists during the period 1984 through 1988. LESO objects on grounds that this Interrogatory exceeds the scope of the jurisdictional discovery permitted by the trial court. This Court has denied that objection and accordingly, LESO should provide a response to this Interrogatory.

**Interrogatories Nos. 8 and 9 [Libya]; Interrogatories 9 and 10 [LESO]**

These four Interrogatories seek identification of any persons *presently* affiliated with defendants who have any information about Zaid Safarini, a former member of the Abu Nidal

Organization who may have witnessed the execution of Alec Collett, and any records related to Safarini. Defendants Libya and LESO respond by stating that there are no such persons *formerly* affiliated with Libya or LESO and no such records exist. Defendants response is non-responsive to the inquiry posed. No objections are noted. Defendant Libya is instructed to respond to Interrogatory No. 8 in its present form and also to explain what steps were taken to comply with Interrogatory No. 9.

**Interrogatory Nos. 10 and 11 [Libya] and Nos. 11 and 12 [LESO]**

These Interrogatories ask for a description of Libya's and LESO's response to an April 15, 1987 bombing raid over Libyan territory by United States military forces, and records relating to such bombing raid. Both Defendants respond by stating that this inquiry is beyond jurisdictional discovery. The Court finds that these Interrogatories, in their present form, are overly broad. Defendants will respond to these Interrogatories to the extent that any response to the bombing raid and/or records pertaining thereto involved the Abu Nidal Organization.

**Interrogatory No. 12 [Libya] and No. 13 [LESO]**

These Interrogatories request a general description of Libya and LESO's "policy toward terrorism in the period 1984 to 1988." Defendants object on grounds that these requests are overly broad and vague and not limited in scope to the jurisdictional discovery ordered by the trial court. The Court agrees that these Interrogatories are overly broad and go beyond the scope of the ordered jurisdictional discovery. Defendants should respond to these Interrogatories to the extent that there were any stated policies in effect regarding Libya [or LESO] and the Abu Nidal Organization during this time frame.

**Interrogatory Nos. 13 and 14 [Libya] and Nos. 14 and 15 [LESO][6]**

These Interrogatories request a description of Libya's "foreign policy goals" and LESO's "policy goals" for the period 1984 through 1988, and a description of Libya's and LESO's "policy goals with respect to Lebanon . . ." during that same period. The Court finds Defendants' objections that these Interrogatories are vague, overly broad and go beyond the scope of jurisdictional discovery are well founded. Accordingly, the Defendants need not respond to these inquiries.

**Interrogatory Nos. 16 and 17 [LESO][7]**

______These Interrogatories request a description of LESO's "function and role in Libya in the period 1984 through 1988" and LESO's "operations and activities" during that same period. LESO objects on grounds that these inquiries exceed the scope of jurisdictional discovery. The Court finds that the scope of these Interrogatories is vague and exceedingly broad. Accordingly, Defendant LESO need only respond to these Interrogatories to the extent that they request information about LESO's "function and role in Libya" and "operations and activities" as it relates to the Abu Nidal Organization.

**Request for Sanctions**

The Court declines to award sanctions against the Defendants at this time. If Defendants fail to comply with this Court's Memorandum Opinion and the accompanying Order, the Court

[6]Interrogatory No. 14 directed at Libya is mislabeled Interrogatory No. 13 on Libya's Responses and Objections, Motion Exhibit C.

[7]Interrogatory No. 17 is mislabeled Interrogatory No. 16 on LESO's Response and Objections. Motion Exhibit C.

will consider any renewed request for sanctions made by the Plaintiffs.

DATED: November 23, 2005

____________________________________
ALAN KAY
UNITED STATES MAGISTRATE JUDGE